UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID BLACK, as Special Administrator of the Estate of George Taylor, deceased, | ) ) ) ) | CIV. 09-4170-KES |
| Plaintiff, | ) ) ) | ORDER |
| vs. | ) ) | |
| PILOT TRAVEL CENTERS, LLC, | ) ) | |
| Defendant. | ) | |

    Plaintiff, Helen Taylor as special administrator of the estate of George Taylor, brought a wrongful death suit against defendant, Pilot Travel Centers, LLC, alleging that Pilot negligently maintained its parking lot and, as a result, caused George's death after he was struck and killed by a hit-and-run driver in Pilot's parking lot. During this action, Helen passed away and David Black was appointed as special administrator of George's estate and substituted as the plaintiff in this action. The parties are now in the discovery stage of litigation. Black brought a motion to compel certain discovery from Pilot relating to a similar incident involving Gregory Zuba that occurred around November 16, 2005, where a hit-and-run driver struck and killed Zuba in Pilot's parking lot. The court deferred ruling on the motion until it conducted an in camera review of the documents that Pilot claimed were protected by the attorney-client privilege or the work

product doctrine. Docket 28. The court has conducted the in camera review and now grants in part and denies in part Black's motion to compel.

## DISCUSSION

Document 1 is email correspondence dated December 16, 2009, between attorney Sandra Hogland Hanson and Stephen Blair, a risk management supervisor at Pilot. Pilot asserts that this document is protected by the attorney-client privilege.

State law supplies the rules of decision for attorney-client privilege in diversity cases. Fed. R. Evid. 501. Because this is a diversity case and South Dakota law is the governing substantive law, South Dakota law also supplies the law on privilege.

The party claiming a privilege has the burden to establish that the privilege exists. *Dakota, MN & E. R.R. Corp. v. Acuity*, 771 N.W.2d 623, 637 (S.D. 2009) (citing *State v. Catch the Bear*, 352 N.W.2d 640, 645 (S.D. 1984)). The attorney-client privilege protects from disclosure "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . ." SDCL 19-13-3. There are four minimum elements necessary to invoke the attorney-client privilege: "(1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services; and

(4) the communication was made in one of the five relationships enumerated in SDCL 19-13-3." *Catch the Bear*, 352 N.W.2d at 645.

A client is a person who or entity that "is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services . . . ." SDCL 19-13-2(1). Blair, a Pilot representative and contact person for this litigation, is a client because he received legal services from Hanson in the letter dated December 16, 2009. Document 1 is a confidential communication between Blair and Hanson and was intended to facilitate the rendition of legal services. All four elements are met, and, thus, the attorney-client privilege protects document 1 from disclosure to Black.

Document 2 is a letter dated December 9, 2009, from Hanson to Blair. Because this is a communication between an attorney and her client containing legal advice, the attorney-client privilege protects against the disclosure of document 2.

The remaining documents, except documents 9 and 11 that contain handwritten notes, concern reports, photos, newspaper articles, correspondence, and invoices from Doss & Associates Claims Services and Liberty Mutual Insurance Company to Pilot concerning investigations into and insurance claims regarding Zuba's death. Pilot contends that these

3

documents are protected by the work product doctrine and the attorney-client privilege.

Federal law applies in a diversity case where a party asserts the work product doctrine. *Baker v. Gen. Motors Corp.,* 209 F.3d 1051, 1053 (8th Cir. 2000) (citing *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987)). The federal rules provide that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The Eighth Circuit distinguishes between documents produced in the ordinary course of business and in anticipation of litigation:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Simon*, 816 F.2d at 400 (citing 8C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (1970)); *see also* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2024 (4th ed. 2010) ("The focus is on whether specific materials were prepared in the ordinary course of business, or were principally promoted by the prospect of litigation.").

4

A document is produced in anticipation of litigation if there is a threat of an adversary proceeding and the document was produced after that threat became palpable. *Helt v. Metro. Dist. Comm'n*, 113 F.R.D. 7, 12 (D. Conn. 1986) ("To qualify, the documents must have been prepared 'any time after initiation of the proceeding or such earlier time as the party who normally would initiate the proceeding had tentatively formulated a claim, demand or charge.'" (quoting *United States v. AT&T*, 86 F.R.D. 603, 627 (D.D.C. 1979)). The threat of litigation must be a specific threat. *See Resident Advisory Bd. v. Rizzo*, 97 F.R.D. 749, 754 (E.D. Pa. 1983) (reasoning that the work product doctrine "is not applicable unless some specific litigation is fairly foreseeable at the time the work product is prepared."); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 143 (D. Del. 1982) ("[L]itigation must be at least a real possibility at the time of preparation or, in other words, the documents must be prepared with an eye to some specific litigation." (citing *In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir. 1979))). The party resisting discovery bears the burden to prove that the work product doctrine protects the material sought. *Rabushka ex rel United States v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997).

There are two kinds of attorney work product: ordinary and opinion work product. *Baker*, 209 F.3d at 1054. "Ordinary work product includes

5

raw factual information." *Id.* (citing *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4 (8th Cir. 1998)). "Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories." *Id.* (citing *Gundacker*, 151 F.3d at 848 n.5). "Ordinary work product is not discoverable unless the party seeking the discovery has a substantial need for the materials" and "cannot obtain the substantial equivalent" of the requested discovery. *Id.* (citing Fed. R. Civ. P. 26(b)(3)). "[O]pinion work product enjoys almost absolute immunity . . . ." *Id.*

The documents were prepared by an insurance adjuster for Pilot. Pilot asserts no facts that litigation surrounding the incident leading to Zuba's death was anticipated or imminent at the time the documents were prepared. Instead, Pilot cites to case law, particularly *Ashmead v. Harris*, 336 N.W.2d 197 (Iowa 1983), and argues that documents produced in an investigation by an insurance adjuster are assumed to be completed in anticipation of litigation.

But *Ashmead* is no longer good law, *see* docket 28 at 7, and "[c]ourts in the District of South Dakota have set forth the general rule that investigative materials assembled by insurance companies are not protected by the work product privilege." *Lamar Adver. of S.D., Inc. v. Kay*, 267 F.R.D. 568, 577 (D.S.D. 2010) (citations omitted). Other courts have held that routine investigatory documents prepared by insurance company

6

representatives are not work product unless they are prepared for a specific event with a real possibility of becoming an actual adversary proceeding. *See, e.g.*, *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982) (reasoning that "[a] more or less routine investigation . . . is not sufficient to immunize an investigative report developed in the ordinary course of business" under the work product doctrine); *DeGiacomo v. Morrison*, No. Civ. 02-310-M, 2003 WL 22871701, at *1 (D.N.H. Dec. 4, 2003) (reasoning that when documents are prepared by an adjuster without an attorney's assistance, courts have found that the result is ordinary work product, not opinion work product (citing *In re San Juan Dupont Plaza*, 859 F.2d 1007, 1014 (1st Cir. 1988))); *Reavis v. Metro. Prop. & Liab. Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987) (permitting discovery of an insurance adjuster's opinion work product).

      Here, the documents concern an investigation by Doss & Associates and a claims process involving Liberty Mutual relating to Zuba's death. The documents appear to have been compiled in the ordinary course of business after an accident occurred on Pilot's property because the documents do not reference any pending litigation, threat of litigation, or potential liability for Pilot as a result of Zuba's accident. Pilot also makes no specific argument regarding how the documents were prepared in anticipation of litigation.

7

Thus, Pilot has not met its burden to prove that the documents were prepared in anticipation of litigation.[1]

Pilot also asserts the attorney-client privilege for document 3, a general claims executive summary from November 11, 2005, through July 13, 2006. The document involves Pilot, a client, and appears to be confidential, so elements one and two of the attorney-client privilege test are met. *See* SDCL 19-13-3; *Catch the Bear*, 352 N.W.2d at 645. Document 3, however, does not contain any language suggesting that the insurance adjuster prepared the executive claims summary to render or facilitate the rendering of legal services. Furthermore, there is no indication that Pilot faced a real threat of a lawsuit relating to Zuba's death. Confidential communications between a client and his representative are protected by the attorney-client privilege, SDCL 19-13-3(4), but the representative must have "authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client . . . ." SDCL 19-13-2(2). Pilot does not argue that the insurance adjuster or the insurance firm that prepared document 3 had the authority to obtain or facilitate in attaining

---

[1] Moreover, in a February 8, 2011, order, this court held that because Pilot failed to provide the required privilege log when it responded to Black's discovery requests, it had waived the ordinary work product doctrine and, thus, only opinion work product would be protected from disclosure. *See* Docket 28 at 8. Because the documents only contain raw factual information and no attorney opinions, the documents are not opinion work product.

professional legal services on Pilot's behalf. *See also Kay*, 267 F.R.D. at 575 (holding that the attorney-client privilege did not protect an insurance company's investigative materials for an automobile accident). Thus, Pilot has not sustained its burden in proving that the attorney-client privilege protects document 3. Thus, documents 3-12, exclusive of 9 and 11, must be produced to Black.

Document 9 contains copies of South Dakota statutes with handwritten notes and a summary of South Dakota law dated December 7, 2005. Pilot asserts that document 9 is protected by the work product doctrine but does not contend that an attorney wrote the notes. Similarly, document 11 contains two pages of undated handwritten notes, mostly names and phone numbers. Pilot alleges that document 11 is protected by the work product doctrine but does not state that an attorney wrote the notes. Because an attorney's mental impressions and opinions receive almost absolute protection and because nondisclosure will not result in prejudice to Black, the court will assume that the notes in documents 9 and 11 were written by an attorney and, thus, are protected by the opinion work product doctrine. Documents 9 and 11 will not be disclosed to Black. Accordingly, it is

ORDERED that plaintiff's motion to compel (Docket 14) is granted in part as to documents 3, 4, 5, 6, 7, 8, and 10, and denied in part as to documents 1, 2, 9, and 11.

Dated May 12, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE